IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RICHARD A. DORAN AND PATRICIA )     CIVIL NO. 11-00132 LEK-BMK
R. DORAN,                       )
                                )
          Plaintiffs,           )
                                )
     vs.                        )
                                )
WELLS FARGO BANK, ET AL.,       )
                                )
          Defendants.           )
_____ )


**ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS COMPLAINT FILED FEBRUARY 8, 2011**

        Before the Court is Defendant Wells Fargo Bank,

National Association's[1] ("Defendant") Motion to Dismiss Complaint

Filed February 8, 2011 ("Motion"), filed on March 9, 2011.

Plaintiffs Richard A. Doran and Patricia R. Doran (collectively

"Plaintiffs") filed their memorandum in opposition on

March 31, 2011, and Defendant filed its reply on May 9, 2011.

Plaintiffs also filed a supplemental memorandum on May 20, 2011.

This matter came on for hearing on May 23, 2011.  Appearing on

behalf of Defendant was Audrey Yap, Esq., and appearing on behalf

of Plaintiffs was David Cain, Esq., by telephone.  After careful

consideration of the Motion, supporting and opposing memoranda,

and the arguments of counsel, Defendant's Motion is HEREBY

GRANTED for the reasons set forth below.

_____

        [1] Wells Fargo Bank, National Association, is also known as
Wells Fargo.

## BACKGROUND

Plaintiffs, who were proceeding pro se at the time, originally filed the instant action on February 8, 2011 in the State of Hawai`i Circuit Court of the Second Circuit. The Complaint alleges that the subject property, 3360 Kua'au Place, Kihei, Hawai`i 96753 ("the Property"), is Plaintiffs' principal residence. [Complaint at ¶¶ 1-2, 5.] According to the Complaint, the Property is secured by two mortgages from Defendant. Plaintiffs began having difficulty making payments on their first mortgage on or about October 2009, and then began having difficulty making payments on their second mortgage on or about March 2010. Plaintiffs attempted to sell the Property, but were unsuccessful. [Id. at ¶¶ 6-8.]

Plaintiffs allege that they contacted Defendant and they "were specifically encouraged to apply for a loan modification[.]" [Id. at ¶ 9.] According to the Complaint, the loan modification application process continued for eighteen months without either a denial or notice that Plaintiffs may not qualify. [Id. at ¶¶ 10-11.] Instead, Defendant directed Plaintiffs to address "technicalities" and misplaced paperwork. [Id. at ¶ 12.] Plaintiffs state that they incurred costs in preparing the application, including copying costs for required documents. [Id. at ¶ 13.] Plaintiffs submitted "yet another complete modification package" on September 9, 2010, [id. at ¶

14,] but a week later Defendant informed Plaintiffs that it could not find the paperwork [id. at ¶ 15].

Plaintiffs inquired again about the status of their loan modification application on September 17, 2010, and Defendant responded that it had located Plaintiffs' paperwork, but that Plaintiffs' file had been transferred to the short sale department. One of Defendant's representatives claimed that Plaintiffs cancelled their loan modification on September 10, 2010. Plaintiffs deny making such a request. They immediately informed Defendant that they still wanted to be considered for loan modification. [Id. at ¶¶ 16-19.]

Plaintiffs believe that there were some requests from Defendant's representatives, including the entity assisting Defendant with the foreclosure and Defendant's attorney, to postpone the foreclosure auction. Plaintiffs also made numerous written requests to Defendant to continue the loan modification process. Defendant, however, went forward with the foreclosure auction on or about September 17, 2010. After the auction, Defendant went forward with attempts to secure the Property. [Id. at ¶¶ 20-25.]

Plaintiffs claim that, as a result of Defendant's conduct, they have incurred damages, including attorneys' fees, postage, and copying charges. They also state that the foreclosure was the primary reason that they filed personal

Chapter 7 bankruptcy. The bankruptcy proceeding caused Mr. Doran to have difficulty renewing his contractor's license and forced him to change careers, resulting in a substantial reduction in his salary. [Id. at ¶¶ 26-28.]

Plaintiffs allege that Defendant committed fraud ("Count I") by: encouraging them to apply for loan modification; failing to properly process the modification application; and foreclosing on the Property instead of considering the modification application. Plaintiffs assert that Defendant benefitted from this process. [Id. at ¶¶ 29-32.]

Plaintiffs next allege that Defendant committed unfair and deceptive trade practices ("Count II") in violation of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86, et seq. ("Washington CPA"), by engaging in a practice of marketing loan modifications, failing to properly process the applications, and foreclosing on properties based on technicalities in the applications. Plaintiffs allege that they relied upon Defendant's promises of loan modification to Plaintiffs' detriment and that Defendant has been unjustly enriched. [Id. at ¶¶ 34-39.]

Plaintiffs next allege that Defendant committed wrongful foreclosure ("Count III") by inducing Plaintiffs to apply for loan modification and falsely assuring Plaintiffs that they qualified. [Id. at ¶¶ 40-41.]

Plaintiffs also allege slander of title ("Count IV"), slander of credit ("Count V"), intentional or negligent infliction of emotional distress ("Count VI"), and loss of consortium ("Count VII").

Plaintiffs seek: an injunction against the transfer of the Property to Defendant or to a third-party buyer; a determination that Defendant's actions violate Wash. Rev. Code § 19.86 and an award of punitive/treble damages and attorneys' fees and costs pursuant to that provision; consequential damages; attorneys' fees and costs pursuant to any written agreement binding Defendant; and any other appropriate relief.

Defendant removed the instant action on March 2, 2011 based on diversity jurisdiction. [Notice of Removal, filed 3/2/11 (dkt. no. 1-1), at ¶ 5.] The Complaint alleges that Plaintiffs are Hawai`i residents, and the Notice of Removal states that Defendant is a citizen of South Dakota with its main office in South Dakota. Further, the amount in controversy exceeds $75,000.00. [Id. at ¶¶ 2-4.]

I. **Motion**

In the instant Motion, Defendant first points out that, on April 6, 2005, Plaintiffs executed a promissory note ("First Note") and their first mortgage ("First Mortgage") as Trustees Under the Richard and Patricia Doran Family Trust Dated

November 4, 1991 ("the Trust").[2]  The principal amount of the

First Note was $926,000.00, and the First Mortgage gave Defendant

a security interest in the Property.  Defendant subsequently

sold, assigned, and transferred its interest in the First Note

and First Mortgage to U.S. Bank N.A., as Successor Trustee to

Wachovia Bank N.A. for WFASC 2005-AR13 ("U.S. Bank").  One of

Defendant's divisions, Wells Fargo Home Mortgage, Inc., is and

was U.S. Bank's servicing agent for the First Mortgage.  [Mem. in

Supp. of Motion at 1-2.]

On May 21, 2007, the Trust also executed another

promissory note ("Second Note") and another mortgage ("Second

Mortgage") in favor of Defendant.[3]  The principal amount of the

Second Note was $200,000.00, and the Second Mortgage gave

Defendant a security interest in the Property.  Defendant states

that, on or about October 1, 2009, the Trust defaulted under the

terms of the First Note and First Mortgage.  Defendant served a

---

[2] The Mortgage between Richard A. Doran and Patricia R.
Doran, Trustees Under the Richard and Patricia Doran Family Trust
Dated November 4, 1991 as "Borrower" and Wells Fargo Bank, N.A.
as "Lender", recorded on April 19, 2005 in the Bureau of
Conveyances as document number 2005-076070 ("First Mortgage"), is
attached to the Motion as Exhibit A to the Declaration of
Counsel.

[3] The Mortgage between "Richard A. Doran and Patricia Ruth
Doran, Trustees Under the Richard and Patricia Doran Family Trust
Dated Nov -4 1991" as "Mortgagor" and Wells Fargo Bank, N.A. as
"Mortgagee", recorded on July 24, 2007 in the Bureau of
Conveyances as document number 2007-131571 ("Second Mortgage"),
is attached to the Motion as Exhibit B to the Declaration of
Counsel.

Notice of Mortgagee's Intention to Foreclose ("Foreclosure Notice") on the Trust on April 19, 2010.[4] [Id. at 2-3.]

On or about May 7, 2010, Plaintiffs filed a voluntary petition for Chapter 7 bankruptcy. On July 7, 2010, U.S. Bank filed a motion seeking relief from the automatic bankruptcy stay to allow U.S. Bank to enforce its security interest in the Property. On August 2, 2010, the United States Bankruptcy Court for the District of Hawai`i issued an order granting U.S. Bank relief from the automatic stay. At the September 17, 2010 foreclosure auction, U.S. Bank was the highest bidder for the Property. [Id. at 3.]

Defendant argues that Plaintiffs do not have standing to pursue claims relating to the Property because the Trust held the Property prior to the non-judicial foreclosure. Plaintiffs were not parties to either the First Mortgage or the Second Mortgage. Defendant therefore argues that the real party in interest is the Trust. Defendant also points out that a trustee cannot represent a trust pro se. Thus, even if Plaintiffs were to amend the Complaint to name the Trust as the plaintiff, they could not proceed pro se.

---

[4] Exhibit C to the Declaration of Counsel is the Mortgagee's Affidavit of Foreclosure Sale Under Power of Sale, filed October 15, 2010 in the Bureau of Conveyances as document number 2010-156277 ("Foreclosure Affidavit"). The Foreclosure Affidavit notes the service of the Foreclosure Notice on various persons and entities, including Plaintiffs, in their capacities as trustees. [Foreclosure Aff. at 2-3, Exh. C.]

Defendant argues that Plaintiffs have failed to state a claim for fraud because they have failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). Further, the mere allegations that Defendant encouraged Plaintiffs to apply for loan modification and falsely assured Plaintiffs that it would consider modification do not state a claim because, as a matter of law, an unfulfilled promise cannot support a fraud claim because it is not a misrepresentation of an existing fact. Further, Plaintiffs have not alleged that they detrimentally relied on the allegedly fraudulent statements.

Defendant next argues that Plaintiffs fail to state a claim for violation of the Washington CPA. The Washington CPA does not apply because Plaintiffs are citizens of Hawai`i, the Property is located in Hawai`i, and the non-judicial foreclosure took place in Hawai`i.

Defendant argues that Plaintiffs' wrongful foreclosure claim fails because there is no basis in law or fact to conclude that the foreclosure was wrongful. Defendant therefore urges the Court to dismiss that claim with prejudice.

Defendant contends that Plaintiffs' claim for slander of title fails because: Plaintiffs admit that the Mortgages are valid liens on the Property and that they defaulted on the loans; Plaintiffs fail to identify any legal or procedural deficiencies in the foreclosure; and Plaintiffs have not identified any

unprivileged, false, or malicious publications about Plaintiffs'
title. Defendant argues that Hawai`i does not appear to have
recognized a claim for slander of credit. The few jurisdictions
that have recognized the claim require proof that the defendant
made a false and defamatory publication about the plaintiff's
credit. Plaintiffs have not identified any false or defamatory
publication by Defendant. Defendant argues that Plaintiffs
themselves caused any injury to their credit by filing for
bankruptcy and failing to pay their mortgage on time.

Defendant also argues that Plaintiffs' intentional
infliction of emotional distress ("IIED") claim fails because the
Complaint does not allege outrageous conduct. Plaintiffs'
negligent infliction of emotional distress ("NIED") claim fails
because the Complaint does not allege that Defendant has engaged
in negligent conduct, nor does the Complaint allege conduct that
would cause serious emotional distress as a matter of law.
Plaintiffs have not shown that Defendant owed Plaintiffs a duty
of care, nor does the Complaint establish a basis to impute a
duty of care on Defendant's part. Further, the emotional
distress from foreclosure is something that normally constituted
people can cope with, and therefore it cannot support an NIED
claim.

Finally, Defendant argues that Plaintiffs have failed
to state a claim for loss of consortium. Loss of consortium is a

derivative claim, and all of Plaintiffs' underlying tort claims are without factual or legal basis.  Defendant therefore asks the Court to dismiss the Complaint in its entirety.

## II.  **Plaintiffs' Memorandum in Opposition**

Plaintiffs retained counsel prior to filing their opposition to the Motion ("Memorandum in Opposition").  As to the argument that Plaintiffs lack standing to bring suit in their individual capacities, Plaintiffs contend that this argument is moot in light of counsel's appearance.  In the alternative, they argue that the claims are personal in nature because, although title to the Property is held in the Trust, Plaintiffs were personally injured by Defendant's conduct.  [Mem. in Opp., Decl. of David W. Cain, at ¶¶ 3-6.]

As to the fraud, unfair and deceptive trade practices, and wrongful foreclosure claims, Plaintiffs argue that Defendant falsely assured them that they would qualify for loan modification, but Defendant foreclosed instead.  Plaintiffs state that they relied on these assurances to their detriment.  [Id. at ¶ 10.]  As to the slander of title claim, Plaintiffs allege that Defendant has clouded title to the Property by foreclosing.  As to the slander of credit claim, Plaintiffs assert that the foreclosure process impaired their credit score and encouraged them to file for bankruptcy.  [Id. at ¶¶ 11-12.]  As to the IIED and loss of consortium claims, Plaintiffs allege that the loan

modification and foreclosure processes "caused them unreasonable stress and impaired their society and services." [Id. at ¶ 13.]

Plaintiffs therefore argue that the allegations in the Complaint are more than sufficient to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

Plaintiffs also included affidavits stating that each of them was individually injured by Defendant's conduct and that each of them suffered damages as a result. [Mem. in Opp., Aff. of Richard A. Doran, Aff. of Patricia R. Doran.]

## III. **Defendant's Reply**

In its Reply, Defendant reiterates that, because Plaintiffs are neither the owners of the Property nor the borrowers on the mortgages, they lack standing to bring the instant action. The mere fact that they reside at the Property is not enough to confer standing. [Reply at 2.] Defendant argues that the Trust is the real party in interest or, at the very least, the Trust is an indispensable party under Fed. R. Civ. P. 19. [Id. at 3 & n.2.]

Defendant argues that Plaintiff's Complaint cannot survive the dismissal standard because there are no factual allegations to support Plaintiffs' legal conclusions. In addition to reiterating their arguments from the Motion, Defendant argues that, even if the Washington CPA applies, a claim for unfair and deceptive trade practices must be pled with

the same particularity required under Fed. R. Civ. P. 9(b).  The
Complaint does not satisfy Rule 9(b).

IV.  **The Court's Questions**

On May 16, 2011, this Court issued an Entering Order
setting forth questions for counsel to address at the hearing on
the Motion.  [Dkt. no. 22.]  The Court directed the parties to
address whether the judicial estoppel doctrine applied,
precluding the litigation of claims that Plaintiffs should have
identified as assets during their bankruptcy proceedings.

Plaintiffs filed a memorandum regarding the Court's
questions on May 20, 2011 ("Plaintiffs' 5/20/11 Response").
[Dkt. no. 24.]  Plaintiffs argue that the claims alleged in the
instant case did not arise until Defendant erroneously closed
Plaintiffs' loan modification application and foreclosed on the
Property.  Plaintiffs assert that these events did not occur
until September 2010, culminating in the foreclosure sale on
September 17, 2010.  Plaintiffs therefore assert that the claims
did not arise during the pendency of the bankruptcy proceedings,
and the judicial estoppel doctrine does not apply.

Defendant addressed the Court's questions at the
hearing on the Motion.  Defendant emphasized that, even if
Plaintiffs were not aware of potential claims related to the
denial of loan modification when they filed their bankruptcy
petition, Plaintiffs had an ongoing duty to disclose potential

12

claims that arose during the course of the bankruptcy proceeding.
Further, Defendant argues that Plaintiffs were clearly aware, or
should have been aware, of the purported slander of credit claim
at the time they filed their bankruptcy petition or shortly
thereafter.  Thus, Plaintiffs are, at a minimum, precluded from
bringing their slander of credit claim in the instant case.

**STANDARD**

I.  **Federal Rule of Civil Procedure 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) permits a motion to dismiss a
claim for "failure to state a claim upon which relief can be
granted[.]"

> Under Rule 12(b)(6), review is generally
> limited to the contents of the complaint.
> Sprewell v. Golden State Warriors, 266 F.3d 979,
> 988 (9th Cir. 2001).  If matters outside the
> pleadings are considered, the Rule 12(b)(6) motion
> is treated as one for summary judgment.  See Keams
> v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th
> Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934
> (9th Cir. 1996).  However, courts may "consider
> certain materials-documents attached to the
> complaint, documents incorporated by reference in
> the complaint, or matters of judicial
> notice-without converting the motion to dismiss
> into a motion for summary judgment."  United
> States v. Ritchie, 342 F.3d 903, 908 (9th Cir.
> 2003).
>
> On a Rule 12(b)(6) motion to dismiss, all
> allegations of material fact are taken as true and
> construed in the light most favorable to the
> nonmoving party.  Fed'n of African Am. Contractors
> v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir.
> 1996).  To survive a motion to dismiss, a
> complaint must contain sufficient factual matter
> to "state a claim to relief that is plausible on
> its face."  Bell Atl. Corp. v. Twombly, 550 U.S.
> 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929

> (2007). "A claim has facial plausibility when the
> plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged."
> <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S. Ct. 1937,
> 1949, 173 L. Ed. 2d 868 (2009). "Threadbare
> recitals of the elements of a cause of action,
> supported by mere conclusory statements, do not
> suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554,
> 127 S. Ct. 1955).

<u>Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc.</u>, 693 F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

This Court, however, notes that the tenet that the court must accept as true all of the allegations contained in the complaint – "is inapplicable to legal conclusions." <u>Iqbal</u>, 129 S. Ct. at 1949. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. <u>Id.</u> at 1950.

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." <u>Harris v. Amgen, Inc.</u>, 573 F.3d 728, 737 (9th Cir. 2009) (citation and quotation marks omitted).

## II.   <u>Federal Rule of Civil Procedure 9(b)</u>

Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires that a party make particularized allegations of the circumstances constituting fraud. <u>See</u> <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 557-58 (9th Cir. 2010).

14

In order to sufficiently plead a fraud claim, the plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice." Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010) (citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see also Odom v. Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007) (en banc) ("[T]he state of mind - or scienter - of the defendants may be alleged generally." (citation omitted)); Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is "the functional equivalent of a motion to dismiss under Rule 12(b)(6)[.]" Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding whether a claimant will ultimately prevail but rather whether the claimant is entitled to offer evidence to support the claims asserted. Twombly, 550 U.S. at 563 n.8 (citation omitted).

## DISCUSSION

### I. Judicial Notice

At the outset, the Court notes that it may take judicial notice, *sua sponte*, at any stage of a case. Fed. R. Evid. 201(c), (f). The Court may take judicial notice of facts that are "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Court takes judicial notice of Plaintiffs' First Mortgage and Second Mortgage and the Foreclosure Affidavit. [Motion, Decl. of Counsel, Exhs. A-C.] The accuracy of Defendant's exhibits is readily determinable through sources whose accuracy cannot reasonably be questioned. Further, mortgage agreements are public records and therefore may be the subject of judicial notice. See, e.g., Duarte v. Bank of Am., Civil No. 10-00372 JMS/BMK, 2011 WL 1399127, at *1 n.1 (D. Hawai`i Apr. 12, 2011) (citation omitted); Sakugawa v. Countrywide Bank F.S.B., Cv. No. 10-00503 DAE-KSC, 2011 WL 572528, at *1 n.4 (D. Hawai`i Feb. 14, 2011) (citation omitted).

The Court also takes judicial notice of the docket in In re Doran, case number 10-01361, United States Bankruptcy Court, District of Hawai`i ("Bankruptcy Court"), in general, and the following documents in particular: (1) Plaintiffs' Voluntary

Petition, filed May 7, 2010 (dkt. no. 1); and (2) the Discharge

of Debtor(s) issued by the Bankruptcy Court on August 25, 2010

(dkt. no. 30).  These documents are subject to judicial notice

because they are public records and the accuracy of the

Bankruptcy Court's records cannot reasonably be questioned.  <u>See</u>

11 U.S.C. § 107(a) ("[A] paper filed in a case under this title

and the dockets of a bankruptcy court are public records[.]");

<u>see also</u> <u>Reusser v. Wachovia Bank, N.A.</u>, 525 F.3d 855, 857 n.1

(9th Cir. 2008) ("We take judicial notice of the bankruptcy court

order, because it is a matter of public record." (citations

omitted)); <u>Finley v. Rivas</u>, CV 10-00421 DAE-KSC, 2010 WL 3001915,

at *2 n.2 (D. Hawai`i July 31, 2010) ("This court 'may take

notice of proceedings in other courts, both within and without

the federal judicial system, if those proceedings have a direct

relation to matters at issue.'" (quoting <u>United States ex rel.</u>

<u>Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d

244, 248 (9th Cir. 1992))).

## II.  <u>Judicial Estoppel</u>

"Judicial estoppel is an equitable doctrine that

precludes a party from gaining an advantage by asserting one

position, and then later seeking an advantage by taking a clearly

inconsistent position."  <u>Hamilton v. State Farm Fire & Cas. Co.</u>,

270 F.3d 778, 782 (9th Cir. 2001) (citations omitted).  Courts

invoke "judicial estoppel not only to prevent a party from

gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'"  Id. (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)) (alteration in original).

Courts may consider three factors in deciding whether to apply the doctrine of judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position.  Second, . . . whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . .  [T]hird[,] . . . whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (citations and internal quotation marks omitted); accord Hamilton, 270 F.3d at 782-83.

The Ninth Circuit has applied judicial estoppel to prevent plaintiffs from asserting claims that they failed to disclose during earlier bankruptcy proceedings.  See, e.g., Hamilton, 270 F.3d at 784 ("This court has held that a debtor who failed to disclose a pending claim as an asset in a bankruptcy proceeding where debts were *permanently* discharged was estopped from pursuing such claim in a subsequent proceeding." (citation

18

omitted) (emphasis in original)); Hay v. First Interstate Bank of
Kalispell, N.A., 978 F.2d 555, 557 (9th Cir. 1992) (holding that
the failure to give notice of a potential cause of action in
bankruptcy schedules and disclosure statements estops the debtor
from prosecuting that cause of action).

Under 11 U.S.C. § 521(a)(1), debtors are required to
file a list of creditors and, unless the court orders otherwise,
a schedule of assets and liabilities.  "[T]he bankruptcy code
requires scheduling all assets, including 'potential' claims[,]"
and the "[f]ailure to list an asset or interest on the bankruptcy
schedules causes the debtor to be judicially estopped from
pursuing a claim to recover that interest after discharge."
Holland & Knight, LLP v. Deatley, 357 Fed. Appx. 83, 84 (9th Cir.
2009) (citing Hamilton v. State Farm Fire & Casualty Co., 270
F.3d 778, 783, 785 (9th Cir. 2001)).  "The debtor's duty to
disclose potential claims as assets does not end when the debtor
files schedules, but instead continues for the duration of the
bankruptcy proceeding."  Hamilton, 270 F.3d at 785 (citations
omitted).

Plaintiffs filed for bankruptcy on May 7, 2010.  [In re
Doran, case no. 10-01361 (Bankr. D. Hawai`i), Voluntary Petition
(dkt. no. 1).]  The Bankruptcy Court issued the Discharge of
Debtor(s) on August 25, 2010.  [Id., (dkt. no. 30).]  By the time
Plaintiffs filed their Voluntary Petition, they were already

having difficulty making payments on both of the mortgages.
[Complaint at ¶ 7.] In the Voluntary Petition, Plaintiffs did
not disclose any claims against Defendant as potential claims.
[In re Doran, Voluntary Petition, Schedule B, no. 21 (Other
contingent and unliquidated claims of every nature . . .).]
Plaintiffs did not file any amendments to Schedule B in the
course of the bankruptcy proceeding. The judicial estoppel
doctrine would preclude Plaintiffs from pursuing any claims in
the instant case that they had knowledge of, but did not
disclose, during the bankruptcy proceeding. See Hamilton, 270
F.3d at 784. The Court now turns to the discretionary factors
that the United States Supreme Court outlined in New Hampshire v.
Maine.

First, to the extent that any of Plaintiffs' current
claims against Defendant existed at the time of their bankruptcy
proceeding, Plaintiffs are clearly asserting an inconsistent
position regarding those claims. Plaintiff failed to disclose
those claims as potential assets in the bankruptcy proceeding,
effectively denying the existence of such claims, but they are
now pursing the claims in the instant case.

Second, to the extent that any of Plaintiffs' current
claims against Defendant existed at the time of their bankruptcy
proceeding, allowing Plaintiffs to litigate those claims now
would create the perception that Plaintiffs misled the Bankruptcy

Court because Plaintiffs represented to the Bankruptcy Court that they had no such claims or potential claims. Bankruptcy courts rely on such disclosures in evaluating bankruptcy petitions. See Hamilton, 270 F.3d at 784.

Third, to the extent that any of Plaintiffs' current claims against Defendant existed at the time of their bankruptcy proceeding, Plaintiffs will reap an unfair advantage and Defendant will suffer an unfair hardship if the Court allows Plaintiffs to pursue such claims. Plaintiffs benefitted from the automatic stay of the collection of their debuts and from the discharge of their unsecured debts without disclosing their potential claims against Defendant as an asset that could be applied to some of their debts. Defendant, or another entity it was acting on behalf of, was faced with the hardship of trying to collect upon the mortgages in spite of Plaintiffs' bankruptcy.[5]

Thus, the judicial estoppel doctrine applies to any of Plaintiffs' claims in the instant case that existed at the time of their bankruptcy proceeding. Plaintiffs' claims in the instant case all arise from Defendant's alleged failure to properly consider Plaintiffs' loan modification application and

---

[5] The Court notes that U.S. Bank, the entity for which one of Defendant's division is and was the servicing agent for the First Mortgage, obtained relief from the automatic bankruptcy stay to exercise its rights and remedies with respect to the Property. [In re Doran, Order Granting Relief from Stay, filed 8/2/10 (dkt. no. 27).]

the eventual foreclosure. Plaintiffs' represent that Defendant's refusal to consider their application did not occur until September 2010, and the foreclosure sale occurred on September 17, 2010. [Pltfs.' 5/20/11 Response at 3-4.]

This Court has reviewed Plaintiffs' claims and finds that all of them, with the exception of the slander of credit claim, rely primarily upon Defendant's actions culminating in the foreclosure sale. The foreclosure sale did not occur until after the conclusion of the bankruptcy proceedings. Thus, although during the bankruptcy proceedings, Plaintiffs were clearly aware of the possibility that Defendant could foreclose on the Property, this Court cannot find that Plaintiffs had knowledge of enough facts to know that these potential claims existed prior to the discharge. See Hamilton, 270 F.3d at 784 (explaining that a plaintiff must have knowledge of enough facts to know that potential claims exist at the time disclosure in bankruptcy is required (citations omitted)); see also Hay, 978 F.2d at 557 ("We recognize that *all* facts were not known to [the bankruptcy petitioner] at that time, but enough was known to require notification of the existence of the asset to the bankruptcy court." (citations omitted) (emphasis in original)). The Court therefore FINDS that Count I (fraud), Count II (violation of the Washington CPA), Count III (wrongful foreclosure), Count IV (slander of title), Count VI (infliction of emotional distress),

and Count VII (loss of consortium) are not subject to judicial estoppel.

Count V (slander of credit) alleges that Defendant's actions impaired Plaintiffs' credit, "causing them to lose the ability to have good credit . . . ." [Complaint at ¶ 47.] Plaintiffs' theory behind this claim is that Defendant's "foreclosure process impaired their credit score and encouraged them to pursue bankruptcy relief." [Mem. in Opp., Decl. of David W. Cain, at ¶ 12.] By the time they filed their bankruptcy petition, Plaintiffs were aware that Defendant had begun the foreclosure process because Defendant served them with the Foreclosure Notice in April 2010. [Foreclosure Aff., Exh. C.] Further, insofar as the slander of credit claim is based upon the pursuit of bankruptcy relief as a result of the foreclosure process, Plaintiffs were clearly aware, or should have been aware, of the potential slander of credit claim when they filed their bankruptcy petition. The Court therefore FINDS that Plaintiffs' slander of credit claim is subject to judicial estoppel.

Plaintiffs' failure to disclose that claim at any point during the bankruptcy proceeding precludes them from litigating that claim in the instant case. Further, no amendment to the Complaint can cure this defect in the slander of credit claim. Plaintiffs' slander of credit claim is therefore DISMISSED WITH

PREJUDICE.  The Court emphasizes that it expresses no opinion as to the viability of the slander of credit claim if Plaintiffs had not been judicially estopped from litigating it.

## III. **Defendant's Motion**

The Court now turns to the arguments that Defendant raised in its Motion.  Defendant argues that the Court should dismiss the Complaint because: the Trust was the owner of the Property and the borrower under the mortgages, and therefore Plaintiffs lack standing to bring the claims in the Complaint; and, even if the Trust is replaced as the plaintiff, the Complaint fails to state a claim upon which relief can be granted.

### A. **Standing**

Plaintiffs argue that, although the Trust was the owner of the Property, the Property is Plaintiffs' home and they have personally suffered damages as a result of Defendant's actions.

> Article III standing exists only when the plaintiff has suffered an injury-in-fact, i.e., an "invasion of a legally protected interest" that is "concrete and particularized."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  It is well-settled that a plaintiff who is not a party to a mortgage loan cannot assert a claim against the lender for asserted violations of [the Real Estate Settlement Procedures Act of 1974 ("RESPA")] stemming from the loan settlement process.  See, e.g., Thomas v. Guild Mortg. Co., No. CV 09-2687-PHX-MHM, 2011 WL 676902, at *4 (D. Ariz. Feb. 23, 2011) (granting summary judgment on RESPA and [the Truth in Lending Act ("TILA")] claims for lack of standing because the plaintiff was not a party to the mortgage, citing cases);

24

> Cleveland v. Deutsche Bank Nat'l Trust Co., No.
> 08cv0802 JM(NLS), 2009 WL 250017 (S.D. Cal. Feb.
> 2, 2009) (dismissing TILA, RESPA, fraud, and other
> claims of a plaintiff whose wife took out a
> mortgage, reasoning that "someone who is not a
> party to [a] contract has no standing to enforce
> the contract or to recover extra-contract damages
> for wrongful withholding of benefits to the
> contracting party").

Santiago v. Bismark Mortg. Co., Civil No. 10-00467 SOM/KSC, 2011
WL 839762, at *4 (D. Hawai`i Mar. 4, 2011) (some alterations in
original).

Plaintiffs, in their individual capacities, did not
hold the title to the Property and were not parties to the
mortgages. Thus, the Trust, and not Plaintiffs, suffered any
injuries that allegedly resulted from Defendant's failure to
modify the terms of the mortgage loans and from the foreclosure
sale of the Property. Plaintiffs therefore lack the required
injury-in-fact to pursue any claims based on Defendant's refusal
to modify the loans and foreclosure. The Court will grant
Defendant's Motion and dismiss those claims. Plaintiffs,
however, can easily remedy this defect in the Complaint by
amending the Complaint to state that Plaintiffs are proceeding on
behalf of the Trust in their capacities as trustees. This is
particularly so in light of the fact that, subsequent to the
filing of Defendant's Motion, Plaintiffs retained counsel and are
no longer proceeding pro se. Any dismissal for lack of standing
would therefore be without prejudice.

In addition, the Court notes that Plaintiffs do have standing to pursue claims which allege injuries that they individually suffered while acting on the Trust's behalf in the attempt to secure loan modification and prevent foreclosure. The Court now turns to the adequacy of each of Plaintiffs' remaining claims.

**B.    Failure to State a Claim**

### 1.   Count I - Fraud

Under Hawai`i law, the elements of a fraud claim are: "(1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance. <u>Miyashiro v. Roehrig, Roehrig, Wilson & Hara</u>, 122 Hawai`i 461, 482-483, 228 P.3d 341, 362-63 (Ct. App. 2010) (citing <u>Hawaii's Thousand Friends v. Anderson</u>, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989)).

In the present case, Plaintiffs essentially base their fraud claim on allegedly false statements that Defendant made to induce Plaintiffs, on behalf of the Trust, to apply for loan modification. [Complaint at ¶ 30.] For example, Plaintiffs allege that Defendant falsely represented that they would qualify for loan modification. [<u>Id.</u> at ¶ 41 (alleging that Plaintiffs applied for loan modification "under the assurance from

26

Wells Fargo that they qualified").]  Plaintiffs also allege that

Defendant represented that it would consider Plaintiffs'

application for loan modification.  [Id. at ¶ 32.]  First, the

allegations of Plaintiffs' fraud claim fail to meet the pleading

requirements of Fed. R. Civ. P. 9(b).  Plaintiffs merely made

conclusory allegations about the allegedly fraudulent statements

without setting forth the time, place, and content of the

allegedly fraudulent statements.  See Shroyer v. New Cingular

Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010).  This

Court must dismiss the fraud claim on this basis alone.

        The Court also notes that, under Hawai`i law, the false

representation forming the basis of a fraud claim "must relate to

a past or existing *material* fact and not the occurrence of a

future event."  Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.,

107 Hawai`i 423, 433, 114 P.3d 929, 939 (Ct. App. 2005)

(citations and block quote format omitted) (emphasis in

original).  Further, even if the allegations satisfy the other

elements of a fraud claim, "[f]raud cannot be predicated on

statements which are promissory in their nature, or constitute

expressions of intention, and *an actionable representation cannot*

*consist of mere broken promises, unfulfilled predictions or*

*expectations, or erroneous conjectures as to future events*[.]"

Id. (citations and block quote format omitted) (emphasis in

original).  The exception to this general rule is that "[a]

27

*promise relating to future action or conduct* will be actionable, however, if the promise was made without the present intent to fulfill the promise." Id. (citations and block quote format omitted) (emphasis in McElroy).

In the present case, Plaintiffs' allegation that Defendant somehow promised Plaintiffs that they would qualify for loan modification, or even that Defendant promised Plaintiffs that it would consider their application, cannot support a plausible fraud claim unless Plaintiffs can also allege that, when Defendant made those promises, it never intended to fulfill them. Absent such a state of mind, the alleged representations are only broken promises and not fraud. The Complaint merely alleges that Defendant foreclosed **in spite of** its prior representations. [Complaint at ¶ 32.] The Complaint does not allege, for example, that Defendant made those representations knowing that it would not fulfill them and knowing that it would foreclose. The Court therefore FINDS that Plaintiffs have failed to allege a plausible fraud claim. It is arguably possible for Plaintiffs to cure the defects in this claim if they can make specific allegations according to the standards discussed *supra*. Plaintiffs must also amend their Complaint to allege this claim on behalf of the Trust because it is the Trust – the title holder to the Property – that was allegedly injured by the failure to grant, or even consider, the loan modification application. The

Court therefore GRANTS Defendant's Motion as to Count I and DISMISSES Count I WITHOUT PREJUDICE.

### 2. __Count II - Unfair and Deceptive Trade Practices__

Count II alleges unfair and deceptive trade practices in violation of the Washington CPA.[6] [Complaint at ¶¶ 33-39.] Wash. Rev. Code § 19.86.020 states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

Plaintiffs have not alleged any connection to Washington in either the Complaint or their Memorandum in Opposition. The Property is located in Hawai`i; Plaintiffs, on behalf of the Trust, executed the notes and mortgages in Hawai`i; and Plaintiffs have not identified anything in the terms of those documents which requires the application of the Washington CPA. The Court FINDS that Plaintiffs have failed to state a plausible claim for unfair and deceptive trade practices in violation of the Washington CPA. Further, there is no indication in the record that Plaintiffs can cure the defects in this claim upon amendment. The Court therefore GRANTS Defendant's Motion as to Count II and DISMISSES Count II WITH PREJUDICE.

### 3. __Count III - Wrongful Foreclosure__

Wrongful foreclosure is a state law claim. <u>See, e.g.</u>,

---

[6] The Court notes that Plaintiffs lack standing to pursue this claim because the Trust was the holder of title to the Property prior to the foreclosure sale.

<u>Curiel v. Barclays Capital Real Estate Inc.</u>, Civ. No. S-09-3074 FCD/KJM, 2010 WL 729499, at *1 (E.D. Cal. Mar. 2, 2010). Plaintiffs' Complaint does do not state what specifically was "wrongful" about the foreclosure, except that the foreclosure happened while Plaintiffs were applying for loan modification and while Defendant was assuring Plaintiffs that they qualified for loan modification. [Complaint at ¶ 41.]

Other cases in this district have asserted wrongful foreclosure claims pursuant to Haw. Rev. Stat. Chapter 667. <u>See, e.g.</u>, <u>Rundgren v. Bank of New York Mellon</u>, Civil No. 10-00252 JMS/LEK, 2011 WL 768800, at *9 (D. Hawai`i Feb. 28, 2011). For example, Haw Rev. Stat. § 667-5 sets forth procedural and notice requirements for foreclosure under power of sale. Plaintiffs have failed to plead any specific factual allegations setting forth the claimed defects in the foreclosure process. The Court therefore FINDS that Plaintiffs have failed to allege a plausible claim for wrongful foreclosure. It is arguably possible for Plaintiffs to cure the defects in this claim, if they can identify any actionable failures to follow the foreclosure process. Plaintiffs must also amend their Complaint to allege this claim on behalf of the Trust because it is the Trust - the title holder to the Property - that was allegedly injured by the wrongful foreclosure. The Court therefore GRANTS Defendant's Motion as to Count III and DISMISSES Count III WITHOUT PREJUDICE.

## 4. **Count IV - Slander of Title**

Plaintiffs' slander of title claim alleges that Defendant impaired the title to the Property[7] by recording various documents, including the notice of the foreclosure sale. [Complaint at ¶ 45.]

> Slander of title is "a tortious injury to property resulting from unprivileged, false, malicious publication of disparaging statements regarding the title to property owned by plaintiff, to plaintiff's damage." Southcott v. Pioneer Title Co., 203 Cal. App. 2d 673, 676, 21 Cal. Rptr. 917 (1962) (citations omitted). . . .
>
>     . . . . "To establish slander of title at common law, a plaintiff must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." B & B Inv. Group v. Gitler, 229 Mich. App. 1, 8, 581 N.W.2d 17, 20 (Mich. Ct. App. 1998).

Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc., CIV. No. 09-00304 SOM/BMK, 2010 WL 3398553, at *12 (D. Hawai`i Aug. 27, 2010); see also, e.g., Thomas v. Takabayashi, No. 27553, 2006 WL 2707372, at *1 n.1 (Hawai`i Ct. App. Sept. 21, 2006) (stating elements of "slander of title at common law" (quoting B & B Inv. Group, 229 Mich. App. 1, 8, 581 N.W.2d 17, 20 (1998))).

First, the Complaint fails to allege the Defendant engaged in the unprivileged, false, malicious publication of

---

[7] The Court notes that Plaintiffs lack standing to pursue this claim because the Trust was the holder of title to the Property prior to the foreclosure sale.

disparaging statements regarding the title to Property. Moreover, this district court has previously rejected a slander of title claim based on an alleged wrongful foreclosure because it was undisputed that the defendant "had a statutory right to file a lien and foreclosure action. Plaintiffs cannot show that the filing of the lien and foreclosure action was 'false' or improper because it was sanctioned by existing law." Johnson v. Ass'n of Apartment Owners of Ke Aina Kai Townhomes, CIVIL NO. 06-00106 HG-KSC, 2006 U.S. Dist. LEXIS 61106, at *27 (D. Hawai`i Aug. 25, 2006).[8] Similarly, in the instant case, Plaintiffs do not deny that they defaulted on the mortgages - they only claim that Defendant should have modified their mortgage loans. Thus, it is undisputed that Defendant's foreclosure, under the terms of the unmodified terms of the mortgages, was sanctioned by existing law.

The Court FINDS that Plaintiffs have failed to state a plausible claim for slander of title. Further, there is no indication in the record that Plaintiffs can cure the defects in this claim upon amendment. The Court therefore GRANTS Defendant's Motion as to Count IV and DISMISSES Count IV WITH PREJUDICE.

### 5. **Count VI - Infliction of Emotional Distress**

Count VI alleges both an IIED claim and an NIED claim.

---

[8] Johnson is not available in Westlaw.

a. __IIED__

Under Hawai`i law, there are four elements of an IIED claim.  First, the plaintiff must prove that the conduct was either intentional or reckless.  Second, the conduct in question must have been "outrageous."  Next, the plaintiff must establish causation, and finally, there must be evidence that the plaintiff suffered extreme emotional distress.  See Young v. Allstate Ins. Co., 119 Hawai`i 403, 425, 198 P.3d 666, 688 (2008).  A determination of "outrageous" conduct is fact specific.  Hawai`i courts have defined outrageous conduct as conduct "'without just cause or excuse and beyond all bounds of decency.'"  Chin v. Carpenter-Asui, No. 28654, 2010 WL 2543613, at *4 (Hawai`i Ct. App. June 24, 2010) (quoting Lee v. Aiu, 85 Hawai`i 19, 34 n.12, 936 P.2d 655, 670 n.12 (1997) (some citations omitted)).  If a plaintiff cannot prove that the alleged conduct rose to the level of "outrageous," dismissal is proper.  See Farmer ex rel. Keomalu v. Hickam Fed. Credit Union, No. 27868, 2010 WL 466007, at *14 (Hawai`i Ct. App. Feb. 2, 2010) (citing Shoppe v. Gucci America Inc., 94 Hawai`i 368, 387, 14 P.3d 1049, 1068 (2000)), cert. denied, 2010 WL 2625261 (Hawai`i June 29, 2010).

This district court has recognized that:

> "Default and foreclosure proceedings generally do
> not rise to the level of extreme and outrageous
> conduct.  Denying a loan modification which might
> result in foreclosure is no more 'outrageous in
> character' than actually foreclosing."  Erickson
> v. Long Beach Mortg. Co., No. 10-1423 MJP, 2011 WL

830727, at *7 (W.D. Wash. Mar. 2, 2011) (citation
omitted) (dismissing IIED claim on summary
judgment). But cf. Bass v. Ameriquest Mortg. Co.,
Civ. No. 09-00476 JMS-BMK, 2010 WL 3025167, at
*10-11 (D. Haw. Aug. 3, 2010) (denying summary
judgment as to an IIED claim where the plaintiff
asserted that the defendant "forged her signature
on the 2006 loans, refused to honor [her] right of
cancellation of the loans when she discovered the
forgeries, and commenced foreclosure proceedings
against [her] when she failed to make her loan
payments").

Uy v. Wells Fargo Bank, N.A., Civ. No. 10-00204 ACK-RLP, 2011 WL
1235590, at *14 (D. Hawai`i Mar. 28, 2011) (alterations in Uy).

In the instant case, the Complaint essentially asserts
that Defendant's conduct during the loan modification application
process and the eventual foreclosure constitutes "outrageous"
conduct. The mere denial of loan modification and the
foreclosure itself do not rise to the level of outrageous conduct
sufficient to allege an IIED claim. See id. The Court
recognizes that Plaintiffs have raised factual allegations of
certain conduct by Defendant in the course of the loan
modification application process that is separable from the
actual denial of loan modification. For example, Plaintiffs
allege that Defendant misplaced their loan modification paperwork
and erroneously transferred their modification file to the short
sale department. [Complaint at ¶¶ 15-17.] Even if these, and
other similar actions alleged in the Complaint, were without just
cause or excuse, they do not rise to the level of actions that
are "beyond all bounds of decency." See Chin, 2010 WL 2543613,

34

at *4 (citations and quotation marks omitted). Plaintiffs' IIED claim does not allege "outrageous" conduct sufficient to raise an IIED claim. The Court therefore FINDS that Plaintiffs have failed to allege a plausible claim for IIED.

It is, however, arguably possible for Plaintiffs to cure the defects in this claim if they can identify any outrageous conduct by Defendant. Further, it may also be possible for Plaintiffs to amend the Complaint to allege outrageous conduct by Defendant which caused them to personally experience extreme emotional distress, even though Plaintiffs experienced the conduct while acting on behalf of the Trust. Thus, if Plaintiffs can meet these requirements in the amended complaint, they would have standing to pursue the IIED claims individually. They cannot, assert the IIED claim on behalf of the Trust. See, e.g., Caso v. Hartford Cas. Ins. Co., No. CIV. S-07-101 FCD DAD, 2008 WL 1970024, at *4 n.9 (E.D. Cal. May 2, 2008); Reva Int'l, Ltd. v. MBraun, Inc., No. 03:06-CV-00306-LRH-VPC, 2007 WL 4592216, at *10 (D. Nev. Dec. 28, 2007); Unionamerica Ins. Co. v. Gen. Star Indem. Co., No. A01-0317-CV (HRH), 2005 WL 757386, at *9 (D. Alaska Mar. 7, 2005).[9] The Court therefore GRANTS Defendant's Motion as to the

--------

[9] The Court notes that, although this appears to be a widely accepted rule of law, the Court was not able to find any Hawai`i case stating the same rule. In Kim v. Pacific Guardian Center, the Intermediate Court of Appeals ("ICA") affirmed the circuit
(continued...)

35

portion of Count VI alleging an IIED claim and DISMISSES the IIED

claim WITHOUT PREJUDICE.

### b. __NIED__

Under Hawai`i law, the elements of a NIED claim are:

(1) that the defendant engaged in negligent
conduct; (2) that the plaintiff suffered serious
emotional distress; and (3) that such negligent
conduct of the defendant was a legal cause of the
serious emotional distress. <u>Tran v. State Farm
Mut. Automobile Ins. Co.</u>, 999 F. Supp. 1369, 1375
(D. Haw. 1998). A cognizable claim for NIED under
Hawaii law also "requires physical injury to
either a person or property," <u>see</u> <u>Calleon v.
Miyagi</u>, 76 Haw. 310, 320, 876 F.2d 1278 (1994), or
a mental illness, <u>see</u> Haw. Rev. Stat. § 663-8.9.

<u>Dowkin v. Honolulu Police Dep't</u>, Civ. No. 10-00087 SOM-LEK, 2010

WL 4961135, at *9 (D. Hawai`i Nov. 30, 2010). Duty and breach of

duty are essential elements of a negligence claim under Hawai`i

law. <u>See</u> <u>Cho v. Hawai`i</u>, 115 Hawai`i 373, 379 n.11, 168 P.3d 17,

23 n.11 (2007) ("It is well-established that, in order for a

plaintiff to prevail on a negligence claim, the plaintiff is

---

⁹(...continued)
court's ruling that "a corporate entity cannot suffer emotional
distress as a matter of law." No. 27430, 2006 WL 2724095, at *4,
*6 (Hawai`i Ct. App. Sept. 21, 2006). The ICA, however, based
its holding upon the failure to meet the requirement that
"'damages for emotional distress will only be recoverable where
the parties specifically provide for them in the contract or
where the nature of the contract clearly indicates that such
damages are within the parties' contemplation or expectation in
the event of a breach.'" <u>Id.</u> at *6 (quoting <u>Francis v. Lee
Enters., Inc.</u>, 89 Hawai`i 234, 244, 971 P.2d 707, 717 (1999)).
This holding in <u>Francis</u>, however, related to claims for emotional
distress damages in breach of contract actions. 89 Hawai`i at
240, 971 P.2d at 713.

required to prove all four of the necessary elements of
negligence: (1) duty; (2) breach of duty; (3) causation; and (4)
damages.").

This district court has recognized that:

> [L]enders generally owe no duty of care sounding
> in negligence to their borrowers. See, e.g.,
> Champlaie v. BAC Home Loans Servicing, LP, 706 F.
> Supp. 2d 1029, 1061 (E.D. Cal. 2009) ("[A]s a
> matter of law, [a] lender [does] not owe a duty in
> negligence not to place borrowers in a loan even
> where there was a foreseeable risk borrowers would
> be unable to repay.") (citing Wagner v. Benson,
> 161 Cal. Rptr. 516, 521 (Cal. App. 1980) (finding
> that a lender has no duty to ensure that borrower
> will use borrowed money wisely)); Nymark [v. Heart
> Fed. Sav. & Loan Ass'n], 283 Cal. Rptr. [53,] 56
> [(Cal. App. 1991)] (similar).

McCarty v. GCP Mgmt., LLC, Civil No. 10-00133 JMS/KSC, 2010 WL
4812763, *6 (D. Hawai`i Nov. 17, 2010) (some alterations in
original).

Even though the present case involves Plaintiffs'
unsuccessful attempts to secure loan modification and not the
origination of the loans, Plaintiffs, acting on behalf of their
Trust, only dealt with Defendant in a borrower and lender
capacity. This Court therefore FINDS that Plaintiffs have not,
and cannot, allege that Defendant owed them a duty of care
sounding in negligence. Plaintiffs' Complaint fails to allege a
plausible NIED claim, and they cannot cure the defects in that
claim by any amendment. The Court therefore GRANTS Defendant's
Motion as to the portion of Count V alleging an NIED claim and

DISMISSES the NIED Claim WITH PREJUDICE.

### 6. Count VII - Loss of Consortium

Under Hawai`i law, loss of consortium is a derivative action based on the damages sustained by the injured spouse. Brown v. KFC Nat'l Mgmt. Co., 82 Hawai`i 226, 241, 921 P.2d 146, 161 (1996). Loss of consortium claims, however, are "only derivative in the sense that [they do] not arise unless one's spouse has sustained a personal injury. The loss of consortium claim is a claim for damages independent and separate from the spouse's claim for damages." Id. (citations and quotation marks omitted) (alteration in original). Insofar as Plaintiffs' Complaint fails to allege claims that survive the instant Motion, the Court must also dismiss Plaintiffs' loss of consortium claim. It is arguably possible for Plaintiffs to cure the defects in this claim if they can amend the IIED claim, or allege new personal claims pursuant to the requirements of Fed. R. Civ. P. 15(a). The Court therefore GRANTS Defendant's Motion as to Count VII and DISMISSES Count VII WITHOUT PREJUDICE.

### CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss Complaint Filed February 8, 2011, filed on March 9, 2011, is HEREBY GRANTED. Plaintiffs' Complaint is HEREBY DISMISSED WITH PREJUDICE as to: Count II - unfair and deceptive trade practices in violation of the Washington Consumer Protection Act;

Count IV - slander of title; Count V - slander of credit; and the portion of Count VI alleging an NIED claim. Plaintiffs' Complaint is HEREBY DISMISSED WITHOUT PREJUDICE as to: Count I - fraud; Count III - wrongful foreclosure; the portion of Count VI alleging an IIED claim; and Count VII - loss of consortium. If Plaintiffs choose to file an amended complaint, they must allege Counts I and III on behalf of the Trust.

Plaintiffs have until **June 14, 2011** to file an amended complaint in accordance with this order. The Court CAUTIONS Plaintiffs that, if they fail to file their amended complaint by **June 14, 2011**, this Court will amend this order to dismiss all of Plaintiffs' claims with prejudice.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2011.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RICHARD A. DORAN, ET AL. V. WELLS FARGO BANK, ET AL.; CIVIL NO. 11-00132 LEK-BMK; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT FILED FEBRUARY 8, 2011**